APPENDIX 8: WHO HASN'T NOTICED? CHILD PORN ALREADY ILLEGAL

# Chicago Daily Law Bulletin

## Who hasn't noticed? Child Porn already illegal.

by David Loundy
May 14, 1998 at page 6.
http://www.loundy.com/CDLB/1998-Child-porn.html

Child pornography can be found on the Internet. Anyone who has passing contact with the media has heard this fact. However, notwithstanding media hype about child pornography on the Internet running unchecked, the law in this area is also pretty clear-cut.

In the U.S., it is illegal to knowingly possess three or more child-pornographic images that have been transmitted in interstate or foreign commerce, including by means of a computer. See e.g. 18 U.S.C. 2251 et seq.

The FBI and other police officials have worked very hard to crack down on child pornographers on the 'Net. Even in the face of varied and sometimes creative defenses, prosecutors have had substantial success at removing child pornographers from society.

Defendants have argued that evidence could not be used against them because they have a right of privacy in their remarks made in America Online chat rooms (U.S. v. Charbonneau, No. CR-2-97-83 (S.D. Ohio, Sept. 30, 1997), and in incriminating comments made by e-mail (Charbonneau; U.S. v. Maxwell, 45 M.J. 406 (C.A.A.F. 1996)).

Both arguments are losers.

Others have argued that computer files of digitized child-pornography are not "visual depictions" which are covered by 18 U.S.C. 2251 et seq. (U.S. v. Hocking, No. CR-95-00556-TJH (9th Cir. Nov. 21, 1997)), also an argument found to be completely devoid of merit. Another argued that he did not know that he "possessed" the child-pornographic images because he thought he had deleted the images from his computer's hard drive (U.S. v. Lacey, 119 F.3d 742 (9th Cir. 1997))-- maybe so, but the floppy disk with illegal images as well as the phone and computer logs were still enough to result in a conviction.

Other defendants have tried to avoid convictions by arguing technical matters of statutory construction (caused by typographical errors in the United States Code Annotated and one of the on-line legal databases)-- also a failed argument (U.S. v. Carroll, 105 F.3d 740 (1st. Cir. 1997)). Even in cases where the FBI has violated the child-pornographer's constitutional rights, convictions have still been upheald (Charbonneau).

Of course, if the law is so clear in every instance involving child pornography on the Internet, this would be the end of this article-- but it is not. Two recent incidents that raise some of the legal ambiguities merit more detailed discussion.

The first incident is the recent case, U.S. v. Hilton, No. 97-78-P-C (D. Maine, Mar. 30, 1998), which invalidated part of the Child Pornography Prevention Act of 1996, 18 U.S.C. Section 2252A. To set the stage, the theory behind child pornography laws in the U.S. traditionally has been that such material is

05 1993
FILED
OCT - 7 2005
NANCY MAYER WHITTINGTON, CLERK

not because of the content of the material itself, but because of the harm the production and distribution of such material causes children who are used to create the child pornography. This then allows one to ask wonderful law-professor type hypothetical questions such as "if child pornography laws are designed to protect children which may be used in the material's creation, what would be the legal status of artificial child pornography?" In other words, what if we have computer-generated child pornography that does not actually involve children in its production-- is the statute still violated?

Legal scholars asked these sorts of questions as "morphing" was becoming an overly-used image manipulation technique (think of the movie "Terminator 2"). Morphing involves taking two images and digitally combines the two into a third hybrid image. With such techniques it would be easy to manufacture an image that appears to be child-pornographic, but which would not require the use of child to create the image. This has been a significant concern.

Congress addressed this issue simply by amending the child pornography statutes to define child pornography as including computer-generated or otherwise created images that appear to be of a minor engaging in sexually explicit conduct. Importantly, Congress also added findings that child pornography is used as a tool to seduce children into the creation of more child pornography, as well as creating the desire in pedophiles for more of such material.

These Congressional findings are instructive in considering the computer-generated pornography hypothetical. Regardless of the veracity of the Congressional findings, District Judge Gene Carter found that they were exactly the statements necessary to overcome the comment expressed by the Supreme Court in New York v. Ferber (458 U.S. 747 (1982)) that simulated child pornography that did not use actual children may have some constitutional protection.

On the other hand, Judge Carter still struck down the prohibition of material which appears to be child-pornographic as unconstitutionally vague. The court noted that it is "quite difficult to distinguish between some teenagers and young adults who have reached the age of legal maturity [which thereby] creates substantial uncertainty for viewers presented with materials depicting post-pubescent individuals." The court noted that this difficulty in classification is equally difficult for computer-generated images. This uncertainty, in turn, then works to chill constitutionally protected expression involving young-looking adults, and thus, the statute is impermissibly overbroad.

This decision is sure to be appealed, especially because its holding is contrary to a case decided last Fall by District Judge Samuel Conti in the U.S. District Court for the Northern District of California (now on appeal) which upheld this same law. The suit was filed by the Free Speech Coalition, a trade group representing the adult entertainment industry, and several other plaintiffs.

However the issue resolves itself, a second incident shows additional dangers posed by the investigation of child pornography on-line. Another aspect of the Child Pornography Protection Act of 1996, along with expanding the definition of child pornography, was to remove certain exemptions from searches and seizures granted to members of the press.

Larry Matthews is a reporter. He has reported on three stories on child pornography on the Internet-- up until his indictment on several counts of possession and trafficking of such material. In the course of supposedly investigating another piece on the topic, Mr. Matthews found that the only way to complete the research he needed was to take on the role of the people he was trying to research. In this role, he engaged in the trading of pictures with the people he was trying to study. And, just as he was claiming to be something other than what he really was, some of the people he sent pictures to were also not what they appeared to be-- they were under cover police looking to catch people like him. The police were not looking to catch under cover reporters, but rather people who were distributing child pornographic pictures in America Online chat rooms, which is exactly

what Mathews was doing.

Although I believe in broad First Amendment rights, I have a hard time supporting Mr. Mathews' cause. As the prosecutor pointed out, had he been dealing cocaine in the name of getting a story he would not be protected, so why should he have immunity from the results of dealing in child pornography? Reporters should have broad protection to protect their sources, and to the extent that the Child Pornography Protection Act diminishes this protection, it could be a bad thing. There was no need for information on confidential sources in this case, as Matthews electronically transmitted the material directly to the police, which was clearly an illegal act. A reporter should not be readily shielded from the direct commission of 15 potential felony counts.

Guess what-- Mr. Hilton, the defendant in the first case mentioned also claims to have been collecting child pornography for research purposes. A Portland Press Herald article states that Hilton has met with an FBI agent and U.S. Customs officials on a number of occasions since 1995 to discuss curbing child pornography on the Internet. He had even been quoted in articles warning parents of the dangers of allowing their children to surf the 'Net unsupervised. Although the police were appreciative, they "also uncovered other evidence that made us question his motivation."

Is this a case of police prosecuting people trying to help cure the Child Pornography problem? Are people who are the problem trying to draw attention away from themselves by appearing to help?

In a story reported via an on-line mailing list about issues pertaining to the politics of technology, police officers in four states are alleging that they are the victims of a reverse sting. In trying to catch child pornographers, the four officers encountered a 17-year-old Illinois girl in chat rooms, and their e-mail relationships quickly became sexually explicit. One officer even sent her a scanned picture of his genitals. The girl then told her mother about the contacts with deputies in Virginia, North Carolina, Georgia, and Texas, and her mother informed authorities in those states which resulted in in the officers being disciplined.

All of these issues can be resolved by a return to basic legal and ethical principles-- protect children, and do not break the law. If a child is harmed, the perpetrator should be punished. The argument that synthetic child porn could lead to more real child porn is unconvincing-- it might lead merely to more synthetic child porn. If it does lead to real child pornography, than a child is being harmed, and the perpetrator should be punished.

Reporters should be able to report on the presence of child pornography on the Internet. They should not, however, be allowed to distribute child pornography themselves, thus breaking the law and harming children. For that, they should be punished. Police should be allowed to find real child pornographers on line. Stings are a great means to accomplish this goal. Law enforcement officials, however, should be able to enforce the law in such contexts without breaking the law themselves in the process.

Existing law works adequately to prevent harm caused by the distribution of child pornography on line. The use of "cyberspace" technology does not change the fact that at some point, if a child is harmed, there is a clear remedy available in the real world to address the issue. Unfortunately, in the end, the Child Pornography Protection Act appears to be another example of reactionary legislation, passed in the name of regulating the electronic frontier-- legislation which primarily functions to threaten constitutional rights without providing any new remedies of substance beyond those that already existed before the legislation was passed.

Child pornography is a problem, but so is hysteria caused in the name of protecting children from a harm for which a legal remedy is already available. Such hysteria poses more of a threat to the Internet than the pornographers themselves.