**APPENDIX 16: ABA - HALF OF U.S. SEES 'JUDICIAL ACTIVISM CRISIS'**



# Half of U.S. Sees 'Judicial Activism Crisis'
## ABA Journal Survey Results Surprise Some Legal Experts

By Martha Neil
Friday, September 30, 2005
http://www.abanet.org/journal/ereport/s30survey.html

More than half of Americans are angry and disappointed with the nation's judiciary, a new survey done for the ABA Journal eReport shows.

A majority of the survey respondents agreed with statements that "judicial activism" has reached the crisis stage, and that judges who ignore voters' values should be impeached. Nearly half agreed with a congressman who said judges are "arrogant, out-of-control and unaccountable."

The survey results surprised some legal experts with the extent of dissatisfaction shown toward the judiciary. "These are surprisingly large numbers," says Mark V. Tushnet, a constitutional law professor at Georgetown University Law Center in Washington, D.C.

"These results are simply scary," adds Charles G. Geyh, a constitutional law professor at Indiana University School of Law in Bloomington.

The Opinion Research Corp. conducted the survey, calling 1,016 adults throughout the country in early September. Participants included 505 men and 511 women aged 18 or older. Due to the effects of Hurricane Katrina, residents of Alabama, Louisiana and Mississippi were not polled.

Calls were made to a random sample of American households. Those surveyed were asked questions about their age and education levels, and were asked to give one of six answers—strongly agree, somewhat agree, neither agree nor disagree, somewhat disagree, strongly disagree or don't know—in response to public statements criticizing the judiciary.

Fifty-six percent of the respondents strongly or somewhat agreed with the opinions expressed in each of two survey statements:

- A U.S. congressman has said, "Judicial activism ... seems to have reached a crisis. Judges routinely overrule the will of the people, invent new rights and ignore traditional morality." (Twenty-nine percent strongly agreed and 27 percent somewhat agreed.)

- A state governor has said that court opinions should be in line with voters' values, and judges who repeatedly ignore those values should be impeached. (Twenty-eight percent strongly agreed and 28 percent somewhat agreed.)

Forty-six percent strongly or somewhat agreed with the opinion expressed in a third statement:

- A U.S. congressman has called judges arrogant, out-of-control and unaccountable. (Twenty-one percent strongly agreed and 25 percent somewhat agreed.)

Among the respondents, younger adults were less likely than older adults to agree with all three

05 1993

**FILED**
OCT - 7 2005
NANCY MAYER WHITTINGTON, CL

statements. Those with a college education were more likely to disagree with the statements than high school graduates.

Only 30 percent of respondents somewhat or strongly disagreed with the first statement and 32 percent felt the same way about the second statement. The most disagreement was reflected in the responses to the third statement, with which 38 percent took issue.

Two percent to 3 percent responded "don't know," and the remainder of the respondents neither agreed nor disagreed with the statements.

The margin of error for the survey is plus or minus 3 percentage points, at the 95 percent confidence level. Opinion Research Corp. says survey results were "weighted by age, sex, geographic region and race to ensure reliable and accurate representation of the total population."

The congressman referenced in the first question is Rep. Lamar Smith, R-Texas, who made the comment at an April 2005 rally in Washington, D.C. The governor in the second question is Matt Blunt, a Missouri Republican, who reportedly made the comment during an interview with a religious publication in May 2005. The congressman in the third question is House Majority Leader Tom DeLay of Texas, who made the comment in March 2005.

Several legal scholars responding to the survey results were startled by the numbers.

Georgetown's Tushnet says he didn't realize the level of dissatisfaction was so high. "What I had thought was the case was that there was a significantly higher residue of general respect for the courts," he says. "And these numbers suggest that that's not true."

Geyh of Indiana University says the survey suggests "a trajectory" upward in the number of people unhappy with the American judiciary—apparently simply because these critics disagree with the law that judges have a duty to apply.

The idea that judges should "somehow follow the voters' views really reflects a fundamental misunderstanding of what judges are supposed to do," he continues. "They should only be criticized when they ignore the law and start infusing their own values into the law regardless of the law."

But one legal scholar with an alternative viewpoint is not surprised. The survey results reflect the reality that "there is a lot of judicial activism under any definition," says John O. McGinnis, a professor at Northwestern University School of Law in Chicago.

"This problem has been coming for a very long time," he says. "I think, for most of [the past] century, the idea of the Constitution as a document that should be interpreted formally and without regard to the judge's own values has been under attack." Judges today also do not give due deference to legislative decisions, and too frequently strike down statutory law, he adds.

Part of the problem, too, McGinnis believes, is that legislators on both sides of the aisle are conducting judicial confirmation hearings as though the candidates' personal political views are relevant to their role on the bench. "Everyone thinks that's what [judges] do, and they just want their own values" to be reflected by the judiciary, McGinnis says.

In a written statement, Rep. Smith said judges today "seem to be promoters of a partisan agenda, not wise teachers relying on established law." As a co-equal branch of the federal government, however, the judiciary is subject to congressional oversight as part of our system of checks and balances, he continued. So "Congress is right to evaluate judges when they behave like unelected superlegislators who want to implement their own social agenda."

Spokespersons for Blunt and DeLay did not respond to requests for comment.

The survey figures did not catch ABA President Michael S. Greco by surprise, either. Instead, he views the results as further confirmation of the need for new ABA programs now under way to educate the public about how American government works, and the role played by judges in a democratic society. Judicial independence is also the subject of three feature articles in the October issue of the ABA Journal.

U.S. DISTRICT CC

One of Greco's first actions after taking office in August was to appoint a Commission on Civic Education and the Separation of Powers. In his President's Message in the October Journal, Greco said the commission was created to address what he terms an "alarming increase in rhetorical and physical attacks on the judiciary." The bipartisan commission is intended to educate Americans about the role of an independent judiciary in U.S. government.

A poll commissioned by the ABA in July from Harris Interactive showed a "shocking" 40 percent of respondents could not correctly identify the three branches of government, Greco wrote.

The commission will help rectify this situation, Greco says, in two ways: First, it will "find out why it is that half the people polled don't know how their government works." Second, it will work with teachers' groups to address "this sorry state of civic education."

Greco hopes to bring lawyers throughout the country into the nation's schools on Law Day as part of a larger program of civic education about the separation of powers and the role of the judiciary. "This is in the preliminary stages, but the thought is, around Law Day, have a program that is carried on C-Span and perhaps beamed into every school in the country."

Held on May 1 each year, Law Day is recognized as a time to focus on how the rule of law makes democracy possible.

Robert H. Rawson Jr., a Cleveland lawyer who chairs the commission, emphasizes that these educational efforts will be nonpartisan. "Our objective is not to get into the politics of judicial selection, but rather to fill what appears to be a gap in general public understanding of the fundamental role of a judge," he says, and "restore what needs restoring—the confidence and trust of the American public in the judiciary."

The commission has two honorary co-chairs: retiring U.S. Supreme Court Justice Sandra Day O'Connor and former U.S. Sen. Bill Bradley of New Jersey.